**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**DELL MONTRELL DINGLE,**<br><br>***Defendant.*** | **Case No.: 1:17-cr-00188-JRR** |

**MEMORANDUM OPINION AND ORDER**

Pending now before the court is Defendant Dell Montrell Dingle's Motion for Sentence Reduction/Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 53; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rules 105.6, 207 (D. Md. 2025). For the reasons that follow, the Motion will be denied.

## I. BACKGROUND

Mr. Dingle is an inmate serving a 144-month term of imprisonment. (ECF No. 41.) He is currently housed at USP Victorville and has served approximately 104 months of his sentence. *Id.* at p. 2. His projected release date is April 24, 2029.[1]

On December 3, 2015, a female sex worker contacted Mr. Dingle for the purpose of obtaining crack cocaine. (ECF No. 1-1 at ¶ 4.) The woman requested Mr. Dingle to deliver the substances to a residence where she and a resident had been smoking crack cocaine. *Id.* Soon thereafter, Mr. Dingle arrived at the residence, armed with a "short[] barreled shotgun and/or long gun" wearing dark clothing with a black mask. *Id.* Mr. Dingle, in tandem with the woman, "robbed the residents of their personal items." *Id.* Upon tracking down Mr. Dingle, execution of

[1] Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited October 21, 2026); *see United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (noting that courts "routinely take judicial notice of information contained on state and federal government websites"). Though Mr. Dingle requests a sentence reduction of only 18 months to begin serving his two consecutive 15-month sentences imposed in the Northern District of West Virginia, the timing of this opinion is still within the 18-month window of relief requested by Mr. Dingle.

a search warrant of his home and person revealed multiple weapons and drug paraphernalia. (ECF No. 26 at p. 8.) Mr. Dingle's alleged drug possession with intent to distribute was at issue in this court, whereas the facts related to the alleged robbery were part of a matter in the Circuit Court for Baltimore County, Case 03K16000102 (the "State case"). (ECF No. 35 at p. 15.)

On May 2, 2017, Mr. Dingle plead guilty to possession with intent to distribute narcotics (21 U.S.C. § 841(a)(1)). (ECF No. 26.) Pursuant to the parties' Rule 11(c)(1)(C) plea, the parties stipulated to a sentence of 144 months of imprisonment concurrent with any sentence imposed in the State case. *Id.* at ¶ 9. This court accepted the parties' recommendation and subsequently imposed a 144-month sentence for possession with intent to distribute narcotics concurrent with the State case sentence. (ECF No. 41.)

Mr. Dingle now moves the court to reduce his sentence by 18 months and provide compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) so that he may begin serving two 15-month consecutive sentences committed while in custody. (ECF No. 53 at p. 2.) Dingle asserts that his medical issues, his daughter's care needs, and his rehabilitation present extraordinary and compelling reasons for compassionate release. (ECF No. 53.)

## II. LEGAL STANDARD

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed.'" 18 U.S.C. § 3582(c). "However, Congress created an exception to that general rule when 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Section 3582(c)(1)(A), as amended by the First Step Act, provides in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case.—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Therefore, when considering a motion for compassionate release, the court "must determine: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023) (citing 18 U.S.C. § 3582). "Only after this analysis may the district court grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release." *Id.*

As the Fourth Circuit recently summarized:

> The 3553(a) factors include: 1) the nature and circumstances of the offense and history and characteristics of the defendant; 2) the need for the sentence imposed; 3) the kinds of sentences available; 4) the kinds of sentences and sentencing ranges for the offense; 5) policy statements by the Sentencing Commission; 6) the need to avoid unwarranted sentencing disparities amongst similarly situated individuals; and, 7) the need to provide restitution to victims of the offense.

*United States v. Wable*, 181 F.4th 441, 446 (4th Cir. 2026). "A district court need not provide an exhaustive explanation analyzing every § 3553(a) factor." *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021).

Additionally, "a district court is not required to address each of a defendant's arguments when it considers a motion for compassionate release under § 3582(c)(1)." *Id.* The Fourth Circuit has explained:

> Instead, we have explained that "how much of an explanation is required depends upon the narrow circumstances of the particular case." [*Jenkins*, 22 F.4th at 170]. And a district court's explanation that "implicitly respond[s]" to the defendant's arguments or counterpoints will typically be sufficient for purposes of appellate review. Bethea, 54 F.4th at 837 (cleaned up). "[T]he touchstone in assessing the sufficiency of the district court's explanation must be whether the district court set forth enough to satisfy our Court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." United States v. Hargrove, 30 F.4th 189, 199 (4th Cir. 2022) (cleaned up).

*United States v. Washington*, 161 F.4th 816, 821 (4th Cir. 2025).

## III. ANALYSIS

Mr. Dingle moves this court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons," specifically with respect to his personal health issues, his rehabilitation efforts, and his daughter's need for a caregiver. (ECF No. 53 at pp. 5, 9.)

### A. Exhaustion of Administrative Remedies

Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to file a motion for compassionate release after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [('BOP')] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). As instructed by the Fourth Circuit:

> [Section] 3582(c)(1)(A) "outlines two routes" for requesting compassionate release in the district court, "one of which does not require exhaustion of administrative remedies." *Muhammad*, 16 F.4th at 131. Specifically, the defendant may move for

> compassionate release "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphases supplied). Stated differently, "the threshold requirement" to file a compassionate release motion is "satisfied if a defendant requests the [BOP] to bring a motion on [his] behalf and *either* fully exhausts all administrative rights to appeal the [BOP]'s decision *or* waits 30 days from the date of [his] initial request." *Muhammad*, 16 F.4th at 131 (emphases in original). In short, the defendant is not required to exhaust his administrative remedies with the BOP *at all* beyond making the initial request for compassionate release. Therefore, we see no reason to limit his motion for compassionate release in the district court to only those grounds for compassionate release he identified in his request to the BOP.

*United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022), *cert. denied,* 144 S. Ct. 1007 (2024) (emphasis in original) (footnote omitted).

Here, the Government does not dispute that Mr. Dingle adequately exhausted his administrative remedies by filing an administrative request for compassionate release with the Warden of FCI Schuylkill,[2] which was subsequently denied by the Warden. (ECF No. 53-1.) Having reviewed the record, the court is satisfied that Mr. Dingle has properly exhausted his administrative remedies, and the Motion may be decided on its merits.

**B. Extraordinary and Compelling Reasons**

In general, "the district court enjoys broad discretion in conducting § 3582(c)(1)(A) analysis." *Jenkins*, 22 F.4th at 169. As discussed above, "[t]o be eligible, the court must find that relief is warranted because of 'extraordinary and compelling reasons' and 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024) (quoting *United States v. High*, 997 F.3d 181, 186 (4th Cir.

[2] Although he is now housed at USP Victorville, Mr. Dingle made his administrative request when housed at FCI Schuylkill.

2021)). "Extraordinary and compelling reasons," while not defined by Congress, is a "demanding standard," and the "criteria are not empty vessels." *Fernandez v. United States*, 608 U.S. 411 (2026).

The Policy Statement at issue is codified at U.S.S.G. § 1B1.13 and titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." Section 1B1.13(b) specifically pertains to "extraordinary and compelling reasons" and identifies multiple bases for finding such extraordinary and compelling reasons. Relevant here, extraordinary and compelling reasons may exist based on the medical circumstances of the defendant. U.S.S.G. § 1B1.13(b)(1). Extraordinary and compelling reasons may also exist based on the family circumstances of the defendant, such that a defendant must prove "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A). Additionally, although not sufficient on its own, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Mr. Dingle invokes several provisions of § 1B1.13(b)(1) and § 1B1.13(d).

***1. Medical Circumstances***

Mr. Dingle claims he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Mr. Dingle also claims he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk

of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

"Courts have consistently recognized that the medical circumstances category under § 1B1.13(b)(1) is not exhaustively defined, and . . . judges are in a unique position to determine what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence." *United States v. Schulman*, No. 6:24-CR-00466-JDA-1, 2026 WL 1878156, at *3 (D.S.C. June 30, 2026) (citation omitted). "Importantly, courts have also held that chronic conditions that can be managed in prison are not a sufficient basis for compassionate release—it is not enough that a defendant suffers from chronic conditions he is not expected to recover from." *Id.* (citation omitted).

Here, Mr. Dingle claims his personal medical issues—including chronic pain and a left hip in need of replacement, obesity and various other medical issues—constitute an extraordinary and compelling basis for relief. (ECF No. 53 at p. 5.) He further asserts that although his not confined to a bed or wheelchair, his "constant pain" due to his hip make it impossible for him to exercise; and while he underwent "injections" administered to relieve the pain, they ultimately did not work. *Id*. at pp. 5, 7. Medical staff at "various institutions" have "counsel[ed] for left hip replacement surgery" since 2020, but it "has not been approved by any of the institutions." *Id.* at p. 7. Because he has not undergone hip surgery, Mr. Dingle explains he is "unable to provide self-care for himself in prison." *Id.* at 8. In support of his Motion, Mr. Dingle submits documentation of his health records. *See* ECF No. 53-2.

Upon review of Mr. Dingle's additional medical records, *see* ECF No. 58-6, there would appear to be no dispute he is in need of a hip replacement; however, his medical providers have determined that Mr. Dingle must lower his body mass index before he is eligible for the surgey. *Id.* at p. 8. In the meantime, Mr. Dingle has been provided with "a cane, bottom bunk[,] and tier

pass," as well as hip steroid injections. (ECF No. 58-6 at p. 18.)

Ultimately, Mr. Dingle's arguments also do not persuade the court that he has satisfied the bases set forth at § 1B1.13(b)(1)(B)(i) and § 1B1.13(b)(1)(C). First, under § 1B1.13(b)(1)(B)(i), "[c]ourts have held that conditions that are adequately treated and monitored within the correctional facility do not satisfy this standard." *Schulman*, 2026 WL 1878156, at *4. Moreover, "[c]ourts have consistently denied relief where medical records show that the defendant's condition is well controlled with medications or that the defendant is receiving adequate care within the facility." *Id.* As described above, while the court appreciates the struggle that Mr. Dingle presently faces, this does not present a circumstance where BOP is simply failing to provide him with adequate medical care, including continuous care and monitoring of his pain. Instead, based on the records offered in support of the Motion, while medical providers confirm surgery is the recommended course of action, Mr. Dingle must first meet medical requirements for eligibility. In the absence of the foregoing, his medical providers have continued to provide Mr. Dingle remedial treatments and accommodation where surgery is not yet medically available to him. The court is thus not persuaded that his conditions present "serious physical or medical condition[s]" amounting to extraordinary and compelling circumstances. U.S.S.G. § 1B1.13(b)(1)(B)(i). *See also Byrd v. United States*, No. 4:14-CR-1, 2025 WL 395476, at *5 (E.D. Va. Feb. 4, 2025) (denying sentence reduction based on hip replacement argument because surgery delay was not due to logistical or facility issues but due to defendant's other medical needs that delayed surgery).

In *United States v. Owens*, the defendant moved for a sentence reduction on the basis of needing hip replacement surgery, which had been denied by the BOP unless he lost a "significant amount of weight." No. 2:21-CR-00029-RLP-1, 2025 WL 2882052 at *3 (E.D. Wash. Oct. 9, 2025). Owens argued his ability to administer self-care was diminished, and he formed a plan to

obtain the surgery upon release using medical insurance. *Id.* To help the defendant, BOP provided the defendant with, *inter alia*, Tylenol, a lower bunk, and a cane. *Id.* The court reasoned Owens had not exhibited an extraordinary and compelling reason based on his medical condition:

> First, while [defendant's] medical difficulties are unfortunate, they do not give cause for relief under § 3582. Both conditions complained of by [defendant] existed at the time of sentencing [] and neither has been shown to substantially diminish his ability to provide self-care. Second, the medical record shows that [defendant] is not eligible for surgery. Even if he were released, it is not clear that he would have insurance coverage to pay for any surgery, even if he was eligible. Third, there is no indication that the BOP is not providing adequate care. While in BOP custody, [defendant] has been evaluated by specialists who concluded he is not eligible for surgery until he loses weight. He is receiving pain medication and weight loss treatment. Other accommodations have been made to reduce the impact of his symptoms. It appears [defendant] has received appropriate treatment from BOP such that his hip condition does not constitute a serious medical condition diminishing his ability to provide self-care, § 1B1.13(b)(1)(B), or a medical condition that requires specialized medical care that is not being provided, § 1B1.13(b)(1)(C).

*Id.* This reasoning is persuasive here.

Further, even if the sufficiency of Mr. Dingle's medical circumstances did not pose a barrier to his requested relief as described above, "having a serious medical or physical condition[] . . . is only one half of the Section 1B1.13(b)(1)(B)(i) analysis." *United States v. Hart*, No. 1:94-CR-00423, 2024 WL 3974230, at *3 (E.D. Va. Aug. 28, 2024). "While 'self-care' is not defined in the policy statement, courts that have examined the issue have required petitioners to show a high level of disability." *United States v. Farmer*, No. 2:23-CR-01, 2025 WL 2842396, at *3 (W.D. Va. Oct. 7, 2025) (footnote omitted) (collecting cases). As the term is undefined, "self-care" is a discretionary inquiry for courts. *Compare United States v. Handy*, No. CR PJM 04-0559, 2020 WL 2041666, at *4 (D. Md. Apr. 28, 2020) (finding self-care diminished where defendant confined to wheelchair or bed 24 hours per day and needing help eating), *with United*

*States v. Mattingley*, No. 6:15-CR-00005, 2020 WL 974874, at *5 (W.D. Va. Feb. 28, 2020) (finding self-care intact despite phantom limb pain from double amputation), *and United States v. Coleman*, No. 3:17-CR-8, 2020 WL 5016967, at *3 (W.D. Va. Aug. 18, 2020) (finding self-care intact despite vision loss and inability to climb stairs).

Here, while the court certainly appreciates the undisputed mobility challenges and discomfort Mr. Dingle faces, his medical records do not reflect that he is unable to self-care, especially with aid from the treatments and accommodations referenced therein. Although he requires pain medication (and has received injections for his pain), neither the Motion nor supporting documents suggest Mr. Dingle has been rendered immobile; and he permits that he is not confined to a bed or wheelchair.

Second, under § 1B1.13(b)(1)(C), the record does not support a finding that Mr. Dingle requires "long-term or specialized medical care" or is "at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). As the District of South Carolina expressed:

> "While the term 'specialized medical care' is left undefined in the amended policy statement, courts construing this subsection look to whether 'the BOP has provided [a] defendant with consistent medical care by (1) working to find available prescription medications that meet [a] defendant's needs; (2) issuing specialist referrals; (3) continually consulting with [a] defendant during medical visits regarding his health issues while awaiting referral processing; and (4) scheduling specialist appointments.'"

*United States v. Hunter*, No. 6:24-CR-00784-JDA-1, 2026 WL 1878350, at *4 (D.S.C. June 30, 2026) (quoting *United States v. Adjaj*, No. 3:22-CR-00240-AN-1, 2024 WL 358167, at *5 (D. Or. Jan. 30, 2024)). Like "self-care," evaluation of whether a defendant presents a "specialized medical care" is committed to the discretion of the court when deciding whether serious risks may arise absent relief. *Compare United States v. Samuel*, No. CR ELH-16-0117, 2023 WL 8650366, at *15–16 (D. Md. Dec. 14, 2023) (finding neurologist order for defendant to undergo brain

imaging for medical condition constituted "specialized medical care" and posed risks consistent with § 1B1.13(b)(1)(C) when brain imaging not initially provided), *with United States v. Hunter*, No. 3:12-CR-289-MOC, 2024 WL 3464039, at *2 (W.D.N.C. July 18, 2024), *aff'd*, No. 24-6752, 2025 WL 2506070 (4th Cir. Sept. 2, 2025) (finding defendant's neurologist evaluation, bloodwork completion, and medical prescriptions constituting adequate care such that "[d]efendant's medical circumstances [did] not constitute an extraordinary and compelling justification for compassionate release"). Ultimately, "[t]o meet the high burden under § 1B1.13(b)(1)(C), [a defendant] must show both that medical care is not being provided and as a result, [he] is at risk of serious deterioration in health." *United States v. Shelton*, No. 3:14-CR-00016, 2026 WL 196477, at *4 (W.D. Va. Jan. 26, 2026).

As discussed above, Mr. Dingle's medical records reflect recommendations for treatment and interim solutions until hip replacement is medically recommended and viable. Essentially, Mr. Dingle has exhibited "mere disagreement with the prescribed treatment plan[,]" which itself "does not constitute [a] failure to provide treatment." *See Shelton*, 2026 WL 196477, at *4, *supra* (citing *United States v. Ayyad*, No. 8:15-CR-00157-LKG, 2024 WL 3424083, at *8 (D. Md. July 15, 2024)). Therefore, the court "has been provided with no reason that [Mr. Dingle's] current health conditions cannot continue to be managed in prison." *United States v. Turpin*, No. 6:06-CR-00025, 2025 WL 1150728, at *5 (W.D. Va. Apr. 17, 2025) (first citing *Ayyad*, 2024 WL 3424083, at *7; and then citing *United States v. Freeman*, 617 F. Supp. 3d 386, 397 (E.D. Va. 2022), *aff'd*, No. 22-6921, 2023 WL 4797316 (4th Cir. July 27, 2023)).

For these reasons, Mr. Dingle does not present extraordinary and compelling reasons for compassionate release based on his medical circumstances.

***2. Family Circumstances***

Mr. Dingle also asserts (albeit briefly) he needs to be the caregiver for his young daughter due to the death of his daughter's mother. Although he does not cite to any particular provision of Policy Statement § 1B1.13, the court construes his argument under the "Family Circumstances of the Defendant" portion of the policy, which, in part, provides for an extraordinary and compelling reason if "[t]he death or incapacitation of the caregiver of the defendant's minor child [occurs] or the defendant's child . . . is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A).

"Prior to November 2023, when addressing motions for compassionate release based on similar circumstances, most courts considered whether there were alternative caregivers." *United States v. Parham*, No. CR ELH-13-151, 2024 WL 4753375, at *10 (D. Md. Nov. 12, 2024) (collecting cases); *see also United States v. Taylor*, No. CR ELH-20-0392, 2025 WL 1518845, at *12 (D. Md. May 27, 2025) (same). In comparison to other portions of § 1B1.13(b)(3), however, "[t]he plain language of the Guidelines does not require a defendant to demonstrate that there are no other available caregivers for a minor child." *Id.* (citing *United States v. Mitchell*, 2024 WL 4702281, at * 6 (4th Cir. Nov. 7, 2024) (asserting that when a Guideline "is not genuinely ambiguous" a court need not view commentary but need not ignore it either)). As "[n]o requirement is mentioned with respect to alternative caregivers," this provision is different from "all three of the other 'extraordinary and compelling' family circumstances set forth in § 1B1.13[](b)(3) [which] require the defendant to establish that there is no available caregiver." *Id.*

Courts in this circuit have found that the "guidelines are advisory," and otherwise "consider[] whether no other caregiver is available." *United States v. Flake*, No. 1:19CR508-1, 2025 WL 3496565, at *3–4 (M.D.N.C. Dec. 5, 2025) (citations omitted); *see also United States v.*

*Holman*, No. 1:12CR72-1, 2025 WL 3496564, at *2 (M.D.N.C. Dec. 5, 2025) (same). As such, like other related provisions within § 1B1.13(b)(3), courts have required the defendant to be the "sole available caregiver." *United States v. Whitted*, No. 5:15-CR-00372-M-1, 2025 WL 1944018, at *7 (E.D.N.C. July 15, 2025) (citing *United States v. Bardwil*, No. 3:20-CR-436, 2023 WL 8421093, at *2 (W.D.N.C. Dec. 4, 2023)). This approach is strengthened when '"there may be relative caregivers available to take custody' of the child." *Id.* (quoting *United States v. Sanchez*, No. 2:20-CR-10, 2024 WL 1653769, at *2 (W.D. Va. Apr. 16, 2024)). Therefore, as "[c]ourts grant these requests despite the existence of another suitable caregiver (meaning, other than the incarcerated individual) exceedingly rarely[,]" "[c]ourts 'generally deny compassionate release when another suitable caregiver is available for a defendant's child.'" *United States v. Day*, 2025 WL 1118825, at *4 (W.D. Va. Apr. 15, 2025) at *3–4 (quoting *United States v. James*, No. 7:19-cr-00024, 2023 WL 6164018, at *3 (W.D. Va. Sept. 21, 2023)).[3]

Here, Lakeasha Bradford, the mother of Mr. Dingle's daughter, passed away from complications from COVID-19 in 2022. (ECF No. 53 at p. 9.) Thereafter, her sister and brother-in-law, Saprina and Perry L. Mickey, stepped in and obtained primary custody of Mr. Dingle's daughter. *Id.* Mr. Dingle notes that the Mickeys have "done a tremendous job of standing in for [his daughter's] parent," but claims his daughter "talks all the time of spending time with [him]." *Id.* Assuming without deciding that Mr. Dingle meets the plain language of § 1B1.13(b)(3)(A), the court concludes he has not demonstrated an extraordinary and compelling reason for

[3] In *United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932 (4th Cir. May 30, 2025), the Fourth Circuit briefly addressed argument that the district court abused its discretion when it considered an alternative caregiver with respect to § 1B1.13(b)(3)(A). 2025 WL 1540932, at *3. The Fourth Circuit agreed with the district court that it need not reach this issue because the defendant made arguments tailored more toward § 1B1.13(b)(5) than § 1B1.13(b)(3)(A), meaning the alternative caregiver issue was not precisely argued on appeal. *See id.* (concluding "the district court did not abuse its discretion" when it "concluded that it did not need to reach the [alternative caregiver] issue"). Thus, the Fourth Circuit has not precisely interpreted § 1B1.13(b)(3)(A) and whether alternative caregivers can be considered when deciding whether extraordinary and compelling grounds are met.

compassionate release.[4]

Mr. Dingle's brief reference to this in his papers fails to meet his burden: among other things, he does not address that any reduction in sentence would still leave him serving his 30-month sentence imposed in the Northern District of West Virginia; he does not state directly he would be his daughter's caregiver; he does not address whether his daughter's current legal custodians would continue to serve as her caregiver during his 30-month sentence; and he does not state the age of his daughter (or even if she is a minor). Thus, this does not present an adequate basis for relief with respect to U.S.S.G. § 1B1.13(b)(3)(A).

Regardless, as discussed below, the court is not satisfied that release is warranted upon consideration of the § 3553(a) factors. *See United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) (affirming lower court determination that defendant's son left with no caregiver upon death of spouse constituted extraordinary and compelling reason but concluding § 3553(a) factors did not warrant release).[5]

---

[4] *See, e.g.*, *United States v. Parham*, No. CR ELH-13-151, 2024 WL 4753375, at *11 (D. Md. Nov. 12, 2024) (explaining the language of § 1B1.13(b)(3)(A) was "not ambiguous[,]" and "[i]f the Sentencing Commission sought to limit section § 1B1.13(b)(3)(A)'s applicability to circumstances where the defendant is the only available caregiver, it would have said so"); *United States v. Taylor*, No. CR ELH-20-0392, 2025 WL 1518845, at *12 (D. Md. May 27, 2025) (same); *United States v. Cunningham*, No. CR ELH-18-017, 2024 WL 4057004, at *9 (D. Md. Sept. 4, 2024) (same). *See also, e.g.*, *United States v. Lanphear*, No. CR 19-19-BLG-SPW, 2024 WL 97369, at *2 (D. Mont. Jan. 9, 2024), *aff'd*, No. 24-346, 2024 WL 4562802 (9th Cir. Oct. 24, 2024) (finding "no requirement that the defendant be the child's only available caregiver"); *United States v. Turner*, No. 18-CR-142, 2020 WL 5717096, at *4 (E.D. Wis. Sept. 24, 2020) (finding "no requirement in the guideline or the statute that defendant also demonstrate that he is the only available care-giver for his daughter"); *United States v. Lou*, No. 05 CR 514, 2023 WL 2499878, at *2 (N.D. Ill. Mar. 14, 2023) (finding "[i]t is the death or incapacitation of the caregiver that is extraordinary and compelling, not only the threat of foster care").

[5] While rehabilitation of the defendant "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted," *see* U.S.S.G. § 1B1.13(d), rehabilitation on its own is not enough to qualify as an extraordinary and compelling reason. 28 U.S.C. § 994(t); *see also United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022). However, a defendant may also "present[] any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Though he recognizes rehabilitation is not itself extraordinary and compelling, Mr. Dingle argues his rehabilitation, considered along with his medical and family circumstances, constitutes an independent extraordinary and compelling reason for compassionate release. (ECF No. 53 at pp. 9–12). When a defendant's "arguments fail to fit into the enumerated categories for relief," a court may still look to "Section 1B1.13(b)(5)'s 'catch-all' category." *United States v. Trammell*, No. CR 3:17-1206-MGL-3, 2024

**C. Section 3553(a) Factors**

Even if Mr. Dingle successfully demonstrated an extraordinary and compelling reason, the court would still not find release warranted based on consideration of the 18 U.S.C. § 3553(a), which include:

> 1) the nature and circumstances of the offense and history and characteristics of the defendant; 2) the need for the sentence imposed; 3) the kinds of sentences available; 4) the kinds of sentences and sentencing ranges for the offense; 5) policy statements by the Sentencing Commission; 6) the need to avoid unwarranted sentencing disparities amongst similarly situated individuals; and, 7) the need to provide restitution to victims of the offense.

*United States v. Wable*, 181 F.4th 441, 446 (4th Cir. 2026). "District courts 'enjoy broad discretion' in evaluating the § 3553(a) factors when deciding a motion for compassionate release," and they must only "set forth enough to satisfy [the appellate court] that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *Centeno-Morales*, 90 F.4th at 279 (4th Cir. 2024) (first quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022); and then citing *High*, 997 F.3d at 188–89).

A court may look to a defendant's behavior while in custody as an indicator of whether the defendant remains dangerous to the community. *See United States v. Crenshaw*, No. ELH-18-0069, 2025 WL 3260451, at *14 (D. Md. Nov. 21, 2025) (noting "[c]ourts place significant weight on a defendant's post-sentencing conduct because it 'provides the most up-to-date picture of a

---

WL 2245494, at *4 (D.S.C. May 17, 2024). Under this category, rehabilitation may be argued as extraordinary and compelling because it "'may be considered as one factor among several' in evaluation of a defendant's motion for compassionate release." *United States v. Ezekiel*, No. 1:16-CR-63, 2025 WL 2390540, at *3 (M.D.N.C. Aug. 18, 2025) (quoting *United States v. Davis*, 99 F.4th 647, 659 (4th Cir. 2024)) (citation omitted). For the same reasons discussed throughout, the court is not persuaded that rehabilitation, whether alone or in concert with other factors, supports the finding of an extraordinary and compelling reason here.

defendant's history and characteristics'") (quoting *Pepper v. United States*, 562 U.S. 476, 492 (2011)). Additionally, a court may consider the defendant's rehabilitation efforts. *Id.*

Here, aside from the letters in support of his Motion, ECF Nos. 53-3, 53-4, 53-5, 54-6, Mr. Dingle's arguments center around deterrence with respect to the sentencing factors. (ECF No. 53 at p. 12–13.) In opposition, the Government points out, *inter alia*, Mr. Dingle's intent to distribute narcotics while possessing a firearm, his lengthy criminal history prior to the underlying offense, commission of the underlying offense while on supervised release, and—"perhaps the most striking aspect of this case[,]"—the additional federal crimes committed while in BOP custody for the underlying offense. (ECF No. 59 at p. 8–10.) In reply, Mr. Dingle reiterates his original arguments and avers that he "committed victimless crimes." (ECF No. 61 at p. 7–10.)

Based on the foregoing, the court agrees with the Government. Of particular relevance to the court are crimes Mr. Dingle committed while in BOP custody. The court is cognizant of Mr. Dingle's acceptance of responsibility for his underlying offenses and completion of BOP educational courses; in the face of his subsequent offenses while in custody, Mr. Dingle's assertion that he has "turned a corner on his criminal activities and [] is on [the] path of getting his act together," (ECF No. 61 at p. 11), is entirely unpersuasive and self-serving. Combined with the seriousness of the offense and Mr. Dingle's lengthy criminal history, the sentencing factors do not favor of release.[6]

## IV. CONCLUSION AND ORDER

Therefore, for the foregoing reasons, it is this 21st day of October 2026,

**ORDERED** that the Motion (ECF No. 53) shall be, and is hereby, **DENIED**.

[6] The court also notes that Mr. Dingle's 144-month sentence is below his career offender Guideline classification. (ECF No. 36.)

/s/
Julie R. Rubin
United States District Judge